# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Harry D. Leinenweber | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 CR 434 - 2, 4 | **DATE** | 10/4/2004 |
| **CASE TITLE** | United States of America vs. Theodore Lee and Andre Lee | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] ENTER MEMORANDUM OPINION AND ORDER: Defendants' motions for a judgment of acquittal or a new trial are DENIED.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | Document Number |
|---|---|---|---|
| | No notices required, advised in open court. | | |
| | No notices required. | number of notices | |
| | Notices mailed by judge's staff. | OCT 0 5 2004 | |
| | Notified counsel by telephone. | date docketed | |
| ✓ | Docketing to mail notices. | | 174 |
| | Mail AO 450 form. | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | |
| WAP | courtroom deputy's initials | date mailed notice | |
| | Date/time received in central Clerk's Office | mailing deputy initials | |

UNITED STATES OF AMERICA,

Plaintiff,

v.

ANDRE LEE and THEODORE LEE,

Defendants.

Case No. 00 CR 434

Hon. Harry D. Leinenweber

**DOCKETED**
OCT 0 5 2004

## MEMORANDUM OPINION AND ORDER

On February 12, 2004, Defendants Andre Lee and Theodore Lee (the "Defendants") were convicted of one count of conspiracy to knowingly pass, possess or utter counterfeit checks of a private organization, in violation of 18 U.S.C. §§ 513(a) and 371. The Defendants were also each convicted of multiple counts of knowingly passing, possessing or uttering counterfeit checks of a private organization. The Defendants now each move for acquittal, or for a new trial in the alternative. For the following reasons, Defendants' motions are **DENIED**.

### I. LEGAL STANDARD

In evaluating a motion for judgment of acquittal, the Seventh Circuit has repeatedly stated the standard of review under FED. R. CIV. P. 29(c) is the following: "Whether at the time of the motion there was relevant evidence from which the jury could reasonably find the defendant guilty beyond a reasonable doubt, viewing the evidence in the light most favorable to the government." See,

174

e.g., United States v. Hagan, 913 F.2d 1278, 1281 (7th Cir. 1990). Relief under Rule 29(c) is appropriate where the relevant evidence is insufficient to prove all of the elements of the charged offense. See United States v. Beck, 615 F.2d 441, 448 (7th Cir. 1980). "Put another way, a jury verdict may be overturned only 'where the record contains no evidence, regardless of how it is weighed, from which the jury could find guilt beyond a reasonable doubt.'" United States v. Boyd, 1992 WL 70321 *1 (N.D. Ill. 1992)(quoting United States v. Bruun, 809 F.2d 397, 408 (7th Cir. 1987)).

In evaluating a motion for a new trial, FED. R. CIV. P. 33 provides that "the court on motion of a defendant may grant a new trial to that defendant if required in the interest of justice." However, a court may not reweigh the evidence and set aside the verdict simply because it believes some other result would be more reasonable. See United States v. Reed, 875 F.2d 107, 113 (7th Cir. 1989). Before a new trial can be granted, the evidence must preponderate heavily against the verdict such that it would be a miscarriage of justice to let the verdict stand. Id.

## II. **DISCUSSION**

18 U.S.C. § 513(a) prohibits an individual from making, uttering or possessing a counterfeit security "of a State or political subdivision therefor or of an organization, with intent to deceive another person, organization or government." Therefore,

to meet the statutory requirements, the Government must show two things: 1) the counterfeit security is "of" a state, political subdivision, or organization; and (2) the counterfeiter intends to use the security to deceive "another" person, organization or government. 18 U.S.C. § 513(c) defines "organization" under the statute to mean "a legal entity . . . which operates in or the activities of which affect interstate or foreign commerce." In short, the plain statutory language requires that two separate organizations are involved: the organization counterfeited, and the organization deceived.

Here, both Defendants challenge their convictions under the theory that the Government failed to prove the required statutory nexus to interstate commerce because it failed to establish that the purported issuers of the falsified checks were real companies. Defendants contend that since the Government failed to prove that these companies even existed, the Government certainly did not establish that these possibly fictitious companies qualified as "a legal entity . . . which operates in or the activities of which affect interstate commerce."

For support, Defendants cite United States v. Barone, 71 F.3d 1442, (9th Cir. 1994), a case in which the Ninth Circuit reversed the conviction of a man who counterfeited the checks of defunct shell companies. In Barone, the Ninth Circuit reasoned that since the at-issue shell companies did not qualify as "organizations"

because their "only effect on interstate commerce results from the passage of its forged securities to a victim which operates in interstate commerce." Id. at 1445.

The Government responds by contending that it did, in fact, sufficiently prove the existence of the at-issue companies as real entities operating in interstate commerce. At trial, Robert Johnson testified as to the existence of the companies. Johnson testified that when Andre Lee recruited him into the check counterfeiting scheme, he told him that he got the checks from "one of their friends that worked at a big company, maybe like ComEd – not ComEd, but I said that for an example – and they don't miss like, you know, eight or nine hundred dollars out, you know." (Trial Transcript, p. 38). When questioned on cross-examination regarding one entity, Johnson also testified that he "did check on my own to see if" Prestige Electrical Maintenance ("PEM") really existed, and concluded that it did, albeit "not at that location" listed on the check. Id. p. 47. Johnson then testified that he researched PEM using a "telephone book" and "411." Id. When defense counsel followed up on Johnson's answer by asking which phone book he located PEM in, Johnson replied that it was an internet yellow pages. Id.

The Government also presents alternative grounds for upholding Defendants' convictions. The Government notes that a check constitutes a security "of" both the account holder and the bank on

which is drawn. See United States v. Wade, 266 F.3d 574 (6th Cir. 2001). Therefore, the Government correctly argues that if it established that both the payee and victim bank were real entities which affect interstate commerce, it met its statutory burden. To establish the bank-bank link, the Government provided the testimony of Gladys Blancas ("Blancas"), the Bank Protection Coordinator for St. Paul Federal Savings Bank ("St. Paul"), a bank which was victimized by Defendants' scheme. Blancas testified that St. Paul bank was FDIC insured. (Trial Transcript, p. 2). She also testified as to "the regular business process by which the payroll checks passed by the defendants were determined to be counterfeit." (Gov. Res. Br., p. 6). This process, according to the Government's rendition of Blancas' testimony, was as follows:

> [T]he checks were cashed by the St. Paul Federal Savings Bank; the checks were stamped with the teller number and branch identification, the checks were then forwarded to the payee banks, through the Federal Reserve Board, and, finally, the checks were returned with stamps or other markings from the payee banks indicating that the checks were counterfeit.

Id. at 6-7.

The Court initially notes that Blancas did not directly testify that the checks were forwarded to the payee banks "through the Federal Reserve Board." Blancas did testify, however, that the banks returned the checks unpaid, and that she contacted them to find out why. Blancas' only testimony as to the Federal Reserve System came when she confirmed that her bank was insured by the

FDIC. Nevertheless, the Court agrees that Blancas' testimony, and the accompanying checks which were submitted as exhibits, suffice to establish that these banks were real entities: they evidently stamped the counterfeited checks "refer to maker," and were successfully contacted by Blancas.

The Government also contends that it provided evidence regarding the interstate commerce requirement, arguing:

> [A]s the government argued and the jury found, the testimony of Gladys Blancas - as well as the counterfeit checks themselves, bearing the stamps of the payee banks - established that the payee banks were involved in the regular business practice of accepting checks drawn on accounts named thereon. Those checks, if counterfeit or drawn on accounts with insufficient funds, were sent back to St. Paul Federal Savings Bank, the victim bank insured by the FDIC. Thus, not only did the payee banks operate in interstate commerce themselves, their activities concerning the instant offense conduct affected interstate commerce by affecting St. Paul Federal Savings, an institution insured by the FDIC, to its detriment.

(Gov. Am. Resp. at 8-9). The Government also notes that Defendants stipulated that the counterfeit checks at issue were either not authorized by the payors corporations, or that the checks named fictional payor corporations and accounts. (Gov. Am. Res. At 10).

The Government cites *United States v. Spinello*, 265 F.3d 150 (3rd Cir. 2001), as further support of that the banks operated in interstate commerce. While analyzing the federal statute criminalizing bank robbery, the Third Circuit in Spinello noted

that, "FDIC-insured banks are fundamental to the conduct of interstate commerce," id. at 158, and further stated:

> Congress itself recognized the connection between interstate commerce and the federally-insured status of banks when it concluded that interstate commerce would be facilitated by a system of federal insurance for the deposits of banks . . .

Id. at 157 (citations omitted). The Court concludes that the Government produced sufficient evidence at trial to establish that the entities operated in interstate commerce.

The Defendants assert one additional reason why the Court should grant their motions. Defendants allege that the court erred by not "submitting the interstate commerce issue to the jury" in the jury instructions and for rejecting their proposed instruction. (A. Lee Mot., p. 4; T. Lee Mot., p. 4-5). The Court instructed the jury with regard to § 513(a) in pertinent part as follows:

> To sustain the charges, the government must prove the following propositions, for each Count in the indictment:
>
> First, that the defendants uttered or possessed a counterfeit and forged security of an organization; and,
>
> Second, that the defendants did so with the intent to deceive another organization.

The Court further explained to the jury the meaning of the following terms: intent to deceive, security, counterfeited, forged, and organization. As to organization, the Court instructed:

> The term 'organization' means a legal entity, other than a government, established or organized for any purpose, and includes a corporation, company, association, firm,

>     partnership joint stock company, foundation, institution,
>     society, union, or any other association of person which
>     operates in or the activities of which affect interstate
>     commerce.

(emphasis added).

The Government, citing United States v. Wicks, 187 F.3d 426 (4th Cir. 1999), contends that the Court's jury instruction on § 513(a) was adequate and that the interstate commerce requirement did not require a separate instruction. (Gov. Supp. Mem., p. 10). In Wicks, the Fourth Circuit held that "[b]ecause the term 'organization' is a term of art that means an entity that operates in or affects interstate commerce, the interstate commerce element was charged adequately in the indictment through the use of the term 'organization.'" Wicks, 187 F.3d at 428.

Here, it is apparent that the Court included within the jury instructions the interstate commerce issue when it instructed the jury that an organization was an entity "which operates in or the activities of which affect interstate commerce." Thus, the instructions were not in error and the Court rejects the Defendants' arguments to the contrary.

After a thorough review of the record, the Court concludes that each element of the crimes charged, including the requirement that the organizations were legal entities operating in interstate commerce, were adequately supported by the evidence in the record. Here, the Government has presented relevant evidence in the form of testimony and the checks "from which the jury could reasonably find

the defendant[s] guilty beyond a reasonable doubt, viewing the evidence in the light most favorable to the government." United States v. Hagan, 913 F.2d 1278, 1281 (7th Cir. 1990). Accordingly, the Defendants' motions for judgment of acquittal are **DENIED**.

The Court also concludes that the evidence presented by the Government does not weigh heavily against the verdict such that it would be a miscarriage of justice to let the verdict against the Defendant stand. See United States v. Beck, 615 F.2d 441, 448 (7th Cir. 1980). Accordingly, Defendants' motions for a new trial are also **DENIED**.

### III. CONCLUSION

For the foregoing reasons, Defendants' motions for a judgment of acquittal or a new trial are **DENIED**.

**IT IS SO ORDERED.**

_____
Harry D. Leinenweber, Judge
United States District Court

Dated: *October 4, 2004*